IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANDRA KISHOR,<br><br>    Petitioner,<br><br>  vs.<br><br>ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, et al.,<br><br>    Respondents.<br>_____/ | No. CIV S-03-1219-LKK-CMK-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner proceeding pro se, brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's amended petition for a writ of habeas corpus (Doc. 31), filed on October 30, 2006,[1] respondent's answer (Doc. 37), filed on December 26, 2006, and petitioner's reply (Doc. 42), filed on January 12, 2007.

/ / /

/ / /

---

[1] The amended petition was attached to petitioner's June 26, 2006, submission. Respondents are correct when they note that, in prior orders, the court erroneously referred to the date of this submission as July 26, 2006. In any event, the operative amended petition was filed by the Clerk of the Court on October 30, 2006, pursuant to court order issued the same day.

1

# I. BACKGROUND

## A. Facts

Because petitioner pleaded no contest, the state court did not set forth any summary of the facts. However, the following facts are recited in the state probation report, and petitioner does not challenge the accuracy of these facts:

> At approximately 12:45 a.m., on 1/13/98, the victim heard someone knocking at her front door. She related her family, including her two children and her 58 year old father had gone to bed about 15 minutes earlier. The victim proceeded to the front door and observed the female co-defendant, Jasmine Singh, standing on the front porch. The victim opened the door to see what the co-defendant wanted, and she related her car had broken down and she was requesting to use the telephone.
> At that point, two Fijian males, Harmeet Singh and Baljeet Singh, appeared from around the front of the house, and the 3 of them forced their way into the victim's residence. Once inside the residence, Harmeet and Baljeet Singh began beating the second victim, Bob R., the first victim's father. While one of the Fijian male suspects was cutting rope, the other Fijian male began breaking furnishings, including lamps and a television set. The female co-defendant demanded the first victim's purse, and the victim gave it to her.
> The male suspects and the co-defendant made the two victims go to a bedroom in the back of the residence. As there were children asleep in that room, the male suspects moved the victims to another bedroom, and tied them up with rope. The male suspects tied victim #2's hands and feet, but only tied victim #1's hands. The female co-defendant was going through the victim's jewelry while the two male suspects were looking for her car keys. When they could not find the car keys, they made victim #1 walk around the house with them. The whole time they repeatedly asked her where the jewelry was.
> The male suspects dragged victim #1 into the bathroom and filled the bathtub with cold water. They demanded the victim give them the jewelry; however, the victim stated she did not have it anymore. One of the male suspects called the victim a "lying bitch," and hit her in the eye with his fist. They then made the victim get into the cold water in the bathtub and continued to demand the jewelry.
> The male suspects then dragged the victim into the living room and hit the victim in the head with a bar. Harmeet Singh soaked a towel with bleach, and put it up the victim's nose. He jumped on the victim's back and held the towel over her face. The victim believes the male suspects were trying to kill her by making her inhale the bleach. Harmeet Singh then poured bleach from the bottle all over the victim's body. The male suspects attempted to open the victim's mouth to try to get her to drink the bleach. However, the victim spit the bleach out and acted as if she lost consciousness. The victim related as she was laying face down on the carpet, she heard the two male suspects arguing whether or not she was dead. One of the male suspects began lighting matches, and attempted to

set the victim on fire.  When that did not work, they taped the victim's mouth shut.

Baljeet Singh then used a knife to stab the female victim twice in the back.  She was positive the male suspects were attempting to kill her.  Shortly afterwards, the co-defendant and the two male suspects stole the victim's car and drove away.  The victim's daughter came to her assistance, and helped her get the rope off of her.  The victim then called 911, and emergency personnel responded.  Both of the victims were transported to UCD Medical Center for treatment of their injuries.

The female victim related she had no idea who any of the suspects were, and she indicated she has never seen them before.  However, the victim related she has been going through a bitter custody battle with her ex-husband, Chandra Kishor.  She stated the custody battle had been ongoing for approximately 1 year, and her ex-husband had threatened to make her life miserable, and he even had threatened to kill her.  She related her ex-husband attempted to strangle her in the past and she believed he could possibly have something to do with this.  Her ex-husband would of known her father was in the residence, and that her father had probably brought the jewelry they were looking for.

Jasmine Singh and Harmeet Singh admitted guilt after they were arrested,  and implicated Chandra Kishor, the victim's ex-husband.

During a subsequent investigation, detectives interviewed Harmeet and Jasmine Singh regarding Chandra Kishor's role in the crime.  Harmeet Singh related to officers that Chandra Kishor and Baljeet Singh had devised a plan to break into the victim's residence.  He indicated Jasmine and himself were to help Baljeet get into the residence, and then they would get jewelry and money.  However, he indicated Chandra Kishor told Baljeet Singh to kill the victim.  Harmeet made a . . . phone call to Chandra Kishor asking him for money to get out of the country.  At the end of the conversation, Chandra Kishor related he would get Harmeet Singh enough money to leave the country.  During an interview with officers, Chandra Kishor admitted to sending Harmeet, Baljeet, and Jasmine Singh to the victim's residence.

**B.    Procedural History**

Petitioner pleaded no contest to attempted murder and robbery and, on January 14, 2000, was sentenced to a determinate term of four years for the robbery conviction and a life term for the attempted murder conviction.  Petitioner filed a direct appeal on September 14, 2000.  On January 9, 2001, the Court of Appeal denied petitioner's direct appeal and affirmed the judgment and conviction.  Because petitioner pleaded no contest, the court did not set forth any summary of the facts.  As to petitioner's claims, the court held:

We have reviewed the brief filed by defendant.  He contends: (1)

his guilty plea was coerced by counsel, and his <u>Marsden</u> motion based on allegations the plea was coerced should have been granted; (2) the court coerced him into entering into the plea bargain, and his motion to withdraw the plea should have been granted on that basis; and (3) he was arrested illegally with "police malice," yielding evidence that should not have been considered.

      We construe the first and second contentions as challenging the validity of defendant's plea. Consequently, the failure to obtain a certificate of probable cause pursuant to section 1237.5 precludes consideration of these matters on appeal. (citations to state law omitted).

      On defendant's notice of appeal filed in the trial court, the box was checked indicating the appeal was also based on denial of a motion to suppress evidence pursuant to section 1538.5. Ordinarily, a certificate of probable cause is not a prerequisite to maintaining an appeal on this ground, and we would consider the issues concerning a suppression motion on appeal. (citations to state law omitted). However, there is no record of any such motion in the record on appeal, nor is there any indication defendant ever properly raised any evidentiary questions in the proceedings before the trial court. As a result, any challenges regarding the evidence, i.e., about his statements to codefendants and about improper interrogation by a detective at the time of his arrest, necessarily refer to matters outside the record and thus are not cognizable. (citation to state law omitted).

Petitioner did not seek direct review in the California Supreme Court.

Petitioner then filed the following series of state post-conviction actions:

| | | |
|---|---|---|
| <u>1st Petition</u> | Superior Court (Case No. 00F05092) | |
| | Filed June 21, 2000 | |
| | Denied July 14, 2000 | |
| <u>2nd Petition</u> | Superior Court (Case No. 01F09041)[2] | |
| | Filed October 10, 2001 | |
| | Denied December 5, 2001 | |
| <u>3rd Petition</u> | Court of Appeal (Case No. C040212) | |
| | Filed January 17, 2002 | |
| | Denied January 24, 2002 | |
| <u>4th Petition</u> | Supreme Court (Case No. S104740) | |
| | Filed February 28, 2002 | |
| | Denied August 21, 2002 | |
| <u>5th Petition</u> | Supreme Court (Case No. S110611) | |
| | Filed October 11, 2002 | |
| | Denied May 14, 2003 | |

---

[2] This petition was originally filed in the Solano County Superior Court as Case No. FCR194556 and transferred to the Sacramento County Superior Court.


|   |   |   |
|---|---|---|
| 1 | <u>6th Petition</u> | Superior Court (Case No. 05F00593) |
| 2 |   | Filed January 18, 2005 |
|   |   | Denied February 4, 2005 |
| 3 | <u>7th Petition</u> | Superior Court (Case No. 0502749) |
| 4 |   | Filed January 21, 2005 |
|   |   | Denied April 27, 2005 |
| 5 | <u>8th Petition</u> | Superior Court (Case No. 05F03341) |
| 6 |   | Filed April 13, 2005 |
|   |   | Denied April 27, 2005 |
| 7 | <u>9th Petition</u> | Superior Court (Case No. 05F04361) |
| 8 |   | Filed May 17, 2005 |
|   |   | Denied June 14, 2005 |
| 9 | <u>10th Petition</u> | Court of Appeal (Case No. C050235) |
| 10 |   | Filed July 15, 2005 |
|   |   | Denied August 11, 2005 |
| 11 | <u>11th Petition</u> | Court of Appeal (Case No. C050260) |
| 12 |   | Filed July 19, 2005 |
|   |   | Denied August 11, 2005 |
| 13 | <u>12th Petition</u> | Supreme Court (Case No. S137000) |
| 14 |   | Filed September 6, 2005 |
|   |   | Denied June 14, 2006 |
| 15 | <u>13th Petition</u> | Supreme Court (Case No. S136817) |
|   |   | Filed August 30, 2005[3] |
| 16 | <u>14th Petition</u> | Court of Appeal (Case No. unknown) |
| 17 |   | Submitted June 26, 2006[4] |

In its July 14, 2000, order denying petitioner's first state habeas petition, the Sacramento County Superior Court stated:

> Petitioner seeks withdrawal from his . . . plea in Sacramento County Superior Court . . . , raising the same claim that he made in a motion to withdraw the plea that was denied at the time of his judgment and sentencing . . . . [¶] Petitioner's remedy would be in an appeal of the denial of his motion to withdraw the plea at the time of his judgment and

---

[3]   The record lodged by respondents does not contain any order addressing this petition. The order, however, was attached to petitioner's June 26, 2006, filing.

[4]   The record before this court does not contain a file-stamped copy of this petition. Nor does the record contain any order from the Court of Appeal addressing this petition. It is unclear whether it was ever filed.

sentencing. However, this court denied the issuance of a certificate of probable cause, which is required for raising this type of issue on appeal. (citations to state law omitted). Petitioner's remedy would be to seek a writ of mandamus from the Third District Court of Appeal, with regard to the denial of the issuance of a certificate of probable cause.

* * *

In any event, even if this court were to decide the petition for writ of habeas corpus on its merits, it would be denied. Petitioner makes the same claim that he did at the time of judgment and sentencing, and presents nothing additional to support his claim that his plea was coerced or that Judge Crossland improperly denied his claim. As such, there would be no reason for the court to now rule differently than Judge Crossland did at the time of judgment and sentencing.

The Superior Court denied petitioner's second petition in an order issued on December 5, 2001. In that order, the court stated:

Petitioner claims that he was coerced into pleading guilty, in that both his attorney and the judge told him that if he did not take the offered plea bargain he would be sentenced to 58 years to life, he would never see his children or family again, that everyone would testify against him, and that he did not have a chance. Petitioner claims he told the judge he was innocent and felt threatened and coerced into entering the plea, but entered the plea anyway. He claims that two days later he attempted to withdraw his plea on these grounds, but the request was denied by the court.
This is the same basic claim raised in his first habeas petition . . . . [¶] Again, petitioner presents nothing different than was earlier presented, or that could have been presented at the time, of the original motion to withdraw the plea at the judgment and sentencing. There is still no reason for the court to now rule differently than Judge Crossland did, and this court would not do so on this petition even if the claim were not barred from review . . . . Therefore, the claim is denied.

The court referenced the state procedural default under In re Dixon, 41 Cal.2d 756 (1953), applicable to claims which could have been, but were not, raised on direct appeal.

Petitioner's third petition was denied by the Court of Appeal on January 24, 2002, without comment or citation. Similarly, on August 21, 2002, the California Supreme Court denied petitioner's fourth petition without comment or citation. The California Supreme Court denied the fifth petition on May 14, 2003, without comment, but with a citation to In re Clark, 5 Cal.4th 750 (1993), indicting that the petition was successive.

///

6

1   In its February 4, 2005, order denying petitioner's sixth petition, the Superior
2 Court stated:

> Petitioner seeks habeas corpus relief from what he believes is a mischaracterization of his sentence . . . as "11 years to life." He claims that that essentially converts his attempted murder conviction into one of attempted murder in the second degree.
> Petitioner was convicted of violating Penal Code § 211 (robbery) and violating Penal Code § 664/187 (attempted murder). Petitioner was sentenced to a determinate term of 4 years for the Penal Code § 211 conviction, and to a life sentence for the Penal Code § 664/187 conviction. The abstract of judgment shows this, and despite petitioner's claims otherwise does not state anywhere that petitioner has been sentenced to 11 years to life.
> It may be that the Department of Corrections has characterized petitioner's aggregate sentence as being 11 years to life. That would not be an inappropriate mischaracterization. Technically, petitioner is sentenced to 4 years determinate term, with a life sentence to be served consecutively to that 4-year term. Penal Code § 664 does not specify any minimum term for the life term imposed for attempted murder; nevertheless, Penal Code § 3046(a)(1) provides that when no minimum term is specified for a life term for a particular crime, that the defendant may not be paroled until after serving at least 7 calendar years. Thus, petitioner's life sentence for the Penal Code § 664/187 conviction is essentially a sentence of 7 years to life. Since petitioner must first serve the 4 years determinate term, then serve 7 additional years consecutively to that before being considered for parole, a shorthand-version of designating his overall sentence is that of 4 + 7, being 11, years to life. Thus, even if the abstract of judgment had designated 11 years to life as the aggregate term for petitioner, that would not be an inappropriate mischaracterization for the Department of Corrections to make, on any of its own internal documentation. Thus, even if petitioner were making a challenge to the latter in this petition, it would fail on the merits in any event, regardless of petitioner's failure to attach reasonably available documentary evidence showing that he exhausted his administrative remedies with regard to such a designation (citations to state law omitted).
> Nor did the court at any time designate that the crime is attempted murder in the second degree. Attempted murder is not divided into degrees. (citations to state law omitted).
> The court does note that petitioner has attached a Department of Corrections document, dated September 28, 2000, characterizing petitioner's attempted murder conviction as "Att. Murder 1st Degree." It is unclear whether petitioner is challenging this designation, which would appear to be contrary to [state law], as well in this petition. Even if petitioner were making such a challenge, however, petitioner does not attach any reasonably available documentary evidence to show that he has exhausted his administrative remedies with regard to the issue, thus the claim would be denied in any event under [state law].

26  ///

Petitioner also claims ineffective assistance of counsel with regard to his first claim. As the first claim fails, as concluded above, this claim fails as well.

Petitioner filed a seventh state habeas petition on January 21, 2005. As to petitioner's third state petition, the Sacramento County Superior Court issued an order on April 27, 2005, concluding:

> Four years after the judgment in Sacramento County Superior Court . . . became final, petitioner has filed a third habeas corpus petition, to challenge that judgment, this time on the ground that the trial court imposed a sentence in violation of Blakely v. Washington (2004) 159 L. Ed. 2d 403. He claims that he was sentenced "to the Upper and maximum term of '7-To-Life' with the possibility of Parole," instead of the 5, 7, or 9-year triad for attempted murder.
> Petitioner is mistaken. Petitioner was sentenced to a life term, which carries a 7-year minimum before parole eligibility pursuant to Penal Code § 3046, because petitioner pleaded no contest to one count of willful, deliberate, premeditated [attempted] murder in violation of Penal Code §§ 664 and 187. Penal Code § 664 specifically provides that "if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole." As the statute provided for the sentence that was imposed on petitioner, no violation of Blakely occurred by its imposition. The 5, 7, or 9-year triad applies only to attempted murder that is not willful, deliberate, and premeditated (citation to state law omitted).
> Rather, the only Blakely claim that could possibly be applicable in this case is a challenge to the trial court's imposition of the 4-year midterm for the robbery count consecutively to the life term. However, even that would not be viable on this petition, as petitioner is not entitled to any relief due to the decision in Blakely.

Citing to Cook v. United States, 386 F.3d 949 (9th Cir. 2004), the court added:

> Specifically, Blakely, is retroactive only to cases still pending on appeal or not yet final . . . at the time that Blakely was decided, or if the 90-day time period for filing a petition for writ of certiorari had not elapsed or a timely-filed petition for writ of certiorari had been filed and was still pending at the time that Blakely was decided. (citations to state law omitted). . . .

The court did not address whether petitioner's Blakely claim was waived by his no contest plea, or whether the claim was barred under state procedural defaults as being successive and untimely.

On April 13, 2005, petitioner filed his eighth state habeas petition. Also on April 27, 2005, the Superior Court addressed the fourth petition, concluding that it suffered from a number of procedural defaults. The court specifically determined that the petition was an abuse of the writ and warned that further habeas claims would not be cognizable absent narrow exceptions. Petitioner filed a ninth petition on May 17, 2005, which the Superior Court denied in a decision issued on June 14, 2005. Again, the court cited a number of state procedural defaults and added that the petition was a "gross abuse of the writ." Petitioner's tenth and eleventh habeas petitions, filed in the California Court of Appeal on July 15, 2005, and July 19, 2005, respectively, were both denied without comment or citation in separate orders issued on August 11, 2005. The California Supreme Court denied petitioner's twelfth petition without comment or citation on June 14, 2006.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

9

petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th

1  Cir. 2002). If so, the next question is whether such error was structural, in which case federal
2  habeas relief is warranted. See id. If the error was not structural, the final question is whether
3  the error had a substantial and injurious effect on the verdict, or was harmless. See id.

4  State court decisions are reviewed under the far more deferential "unreasonable
5  application of" standard where it identifies the correct legal rule from Supreme Court cases, but
6  unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith,
7  123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams,
8  suggested that federal habeas relief may be available under this standard where the state court
9  either unreasonably extends a legal principle to a new context where it should not apply, or
10 unreasonably refuses to extend that principle to a new context where it should apply. See
11 Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court
12 decision is not an "unreasonable application of" controlling law simply because it is an erroneous
13 or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct.
14 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be
15 found even where the federal habeas court concludes that the state court decision is clearly
16 erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to
17 give proper deference to state courts by conflating error (even clear error) with
18 unreasonableness." Id. As with state court decisions which are "contrary to" established federal
19 law, where a state court decision is an "unreasonable application of" controlling law, federal
20 habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn,
21 283 F.3d at 1052 n.6.

22 The "unreasonable application of" standard also applies where the state court
23 denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d
24 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions
25 are considered adjudications on the merits and are, therefore, entitled to deference under the
26 AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Petitioner claims police entrapment.[5] Specifically, he asserts that he was "unlawfully 'entrap[ed] by police' through coercion, and deception, as co-principals were recruited by police in the present case."[6] Respondents argue that this claim is barred by at least one state procedural default. Respondents also argue that the claim should be denied on the merits.

**A.      Procedural Default**

The claim was first addressed on direct appeal. In particular, the California Court of Appeal acknowledged in its January 9, 2001, opinion that petitioner claimed that he had been arrested illegally with "police malice," yielding evidence that should not have been considered. However, because petitioner had not made a contemporaneous objections at the time of trial by filing a motion to suppress evidence, the Court of Appeal denied relief on this claim.[7]

/ / /

---

[5] Petitioner had raised other claims to this court previously, however they are not set forth in the amended petition. The court very clearly informed petitioner on October 30, 2006, that the case would proceed on the petition attached to petitioner's June 26, 2006, filing. Because petitioner does not raise any claims other than the entrapment claim in that document, and because petitioner never sought leave to further amend the petition to include other claims, claims not raised in the amended petition filed on October 30, 2006, have been abandoned.

[6] Respondents address this claim at pages 15 through 20 of their answer. While respondents have also addressed a number of other claims in an abundance of caution, the entrapment claim is the only issue raised in the operative amended petition.

[7] The court did not specifically cite California cases applying the contemporaneous objection procedural default. Rather, it denied relief on the basis that, because petitioner had not filed a motion to suppress, the claim necessarily involved matters outside the record and, therefore, was not cognizable on direct appeal.

1    The claim was next raised in petitioner's ninth state habeas petition filed in the
2 Superior Court on May 17, 2005.  In denying the petition on June 14, 2005, the Superior Court
3 applied state procedural defaults.  In particular, the court concluded that the petition was both
4 successive and untimely, with citations to In re Clark, 5 Cal.4th 750, 787-798 (1993), and In re
5 Robbins, 18 Cal.4th 770, 811-12 (1998).  According to respondents, the California Supreme
6 Court also denied the claim in 2005 with citations to Clark and Robbins.

7    Based on concerns of comity and federalism, federal courts will not review a
8 habeas petitioner's claims if the state court decision denying relief rests on a state law ground that
9 is independent of federal law and adequate to support the judgment.  See Coleman v. Thompson,
10 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989).  Generally, the only state law
11 grounds meeting these requirements are state procedural rules.  Even if there is an independent
12 and adequate state ground for the decision, the federal court may still consider the claim if the
13 petitioner can demonstrate:  (1) cause for the default and actual prejudice resulting from the
14 alleged violation of federal law, or (2) a fundamental miscarriage of justice.  See Harris, 489 U.S.
15 at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

16    In 1993, the California Supreme Court acknowledged that certain of its procedural
17 rules had been considered "discretionary" and "subject to undefined exceptions."  In re Clark, 5
18 Cal. 4th 750, 768 (1993); see also In re Harris, 5 Cal. 4th 813 (1993).  Following Clark, the Ninth
19 Circuit concluded that California's procedural rules do not constitute adequate state grounds and
20 held that a pre-Clark procedural default will not preclude federal habeas review.  See Siripongs v.
21 Calderon, 35 F.3d 1308, 1318 (9th Cir. 1994).

22    Addressing first whether the California successive petition default bars review in
23 this case, the court concludes that the default imposed in this case is independent.  See Bennet v.
24 Mueller, 322 F.3d 573 (9th Cir. 2003) (holding that the application of defaults under Clark has
25 rested on an independent state procedural ground since the California Supreme Court's decision
26 in In re Robbins, 18 Cal.4th 770 (1998)).  Here, petitioner was convicted in 2000.  Therefore, all

of the defaults in this case were necessarily applied after the California Supreme Court's 1998 decision in Robbins.

The next question is whether the Clark successive claim default is adequate. For a state procedural default to be adequate, it must be well-established and consistently applied. See Bennett, 322 F.3d at 583. In 1998, the California Supreme Court decided Robbins, and stated that "Clark serves to notify habeas corpus litigants that we shall apply the successiveness rule when we are faced with a petitioner whose prior petition was filed after the date of finality of Clark." See Robbins, 18 Cal.4th at 788 n.9. Thus, Clark put habeas petitioners in California on notice that the successiveness bar would be consistently applied. Moreover, the successive petition default is well-established in California, at least since Clark was decided in 1993. See Siripongs v. Calderon, 35 F.3d 1308, 1318 (9th Cir. 1994). Again, because petitioner was convicted in 2000 – after Clark and Robbins were decided – the defaults applied in this case were also adequate.

Here, the state courts applied the successive petition default to deny petitioner's entrapment claim. For the reasons discussed above, the court concludes that the default was both independent and adequate as applied in petitioner's case. Therefore, this court is procedurally barred from granting relief on petitioner's entrapment claim.[8]

/ / /

/ / /

/ / /

---

[8] As noted herein, the operative petition only raises the entrapment claim. In his original petition, petitioner had asserted: (1) his plea was involuntary as having been obtained by deception; (2) ineffective assistance of counsel; and (3) the trial judge coerced him into pleading no contest. The court observes that these claims were also procedurally defaulted in the state court on the bases outlined in these findings and recommendations at section I.B.

In particular, claims concerning the validity of his plea agreement should have been presented on direct appeal. However, because petitioner failed to obtain a certificate of probable cause as required under state law, the state court concluded that they had not been properly presented on direct appeal. As to petitioner's claim of ineffective assistance of counsel, that claim was first raised in a successive state habeas petition.

14

### B. The Merits

Assuming that the district judge will not agree that the claim is procedurally barred, the court addresses the merits. As to this claim, the state court also addressed the merits in its May 17, 2005, decision denying petitioner's ninth habeas petition. The court stated:

> Petitioner now claims that he was the victim of police entrapment, in that on February 18, 1998, police had Harmeet Singh, secretly acting on behalf of the police, make phone calls to petitioner and to engage petitioner in conversation, allegedly in violation of Massiah v. United States (1964) 377 U.S. 201, and Miranda v. Arizona (1966) 384 U.S. 436.
>
> * * *
>
> The claim . . . is of no consequence to the judgment. Petitioner pleaded no contest to the charges; no statement of his was ever admitted against him at a trial, as there was no trial. It is irrelevant to the judgment whether petitioner had ever made statements in the past that could have been subject to a motion to suppress based on Massiah and Miranda.
>
> * * *
>
> The claim being utterly meritless, it would be denied in any event under In re Bower (1985) 38 Cal.3d 865, were it not also barred by Clark/Robbins . . . .

The court finds that the state court's decision was neither contrary to nor an unreasonable application of controlling federal law. As respondents correctly observe, a federal habeas corpus petition cannot be used to challenge constitutional violations allegedly occurring before the plea was entered. See Tollett v. Henderson, 411 U.S. 258, 266-67 (1973); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985). As the Supreme Court noted in Lockyer v. Andrade, "As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations." 538 U.S. 63, 75-76 (2003). The state court correctly applied the same logic.

///

///

///

///

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Petitioner's amended petition for a writ of habeas corpus be denied; and

2. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 3, 2007

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE